Case No. 20-5032, Gunay Miriyeva et al., of balance, v. United States Citizenship and Immigration Services, and Kenneth T. Cuccinelli II, Director, U.S. Citizenship and Immigration Services, in his official capacity only. Ms. Wallenberg for the of balance, Ms. Reno for the appellees. Morning Council. Ms. Wallenberg, please proceed when you're ready. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Jennifer Wallenberg for appellants who are plaintiffs below. I've asked to reserve three minutes of my time for rebuttal. Plaintiffs are veterans who were recruited into the United States Army under a Department of Defense initiative intended to provide certain non-citizens those with specialized skills needed by the U.S. military. They were promised an expedited path to U.S. citizenship in exchange for service during a time of designated hostilities. Plaintiffs served for some period of time before they were discharged. They weren't discharged because they did anything wrong. They weren't discharged because the Army didn't want them to serve anymore. They were discharged for medical reasons, either physical ailments that occurred as a result of their service or that were discovered during regular Army medical exams. Plaintiffs each received what's called an uncharacterized discharge. The military treats these discharges as under honorable conditions discharges for purposes of military naturalization. The military naturalization statutes say USCIS is supposed to defer to the military on this exact question, but USCIS has a policy that says that it's going to treat these discharges as disqualifying for military naturalization purposes. The lawfulness of this USCIS policy was not decided below because defendants maintained that 8 U.S.C. 1421 is a jurisdiction stripping statute. Defendants are wrong, and this district court has subject matter jurisdiction to hear plaintiffs' challenge of the USCIS policy. If defendants have their way here, the lawfulness of the USCIS uncharacterized discharge policy will never be decided by any court. There is a presumption that agency action is subject to a discharge review. So I don't understand that. Can I ask, I don't understand why it will never be decided by any court because if the normal administrative review process is followed through to its conclusion and then the agency denies naturalization and then that gets de novo review in a district court, one of the arguments that can be made in the district court is that the grounds for denial are wrong legally and then the district court has to answer that. So there will be an answer to the question of whether what you're calling the policy is valid. It'll just be in a case specific instance involving a particular individual whose petition for naturalization will have been denied. Your Honor, that's that's the one of the problems here is that USCIS is taking the position that no court could ever tell it that its policy is unlawful and do anything about it. And so that I don't think we can ask. We can ask USCIS about this, but I don't read them to be taking the position that no court could say that the grounds that would be asserted for the denial are invalid. I think the question is the scope of relief that the court could answer, that the court could hand down and that we may have some questions about that too. But in terms of whether the legal argument you're making, which is that it's just wrong to deny this uncharacterized class ability to gain naturalization. It seems like the district court would have to decide that question if one of your clients posed it in the context of a specific denial of naturalization. That would be the argument you'd raise as to why the agency got it wrong. And then the district court would have to either agree with you or disagree with you. We agree with you, Your Honor, that a district court should be looking at that if it's not some district court somewhere should be looking at that and making that decision and should be looking at whether this policy or treatment is lawful or not. The USCIS has said that the relief is limited in a 1421C action and therefore what would happen is that in an individual case, a court could decide that the policy is unlawful or could decide that it should have gone through notice and comment rulemaking, but that each very long, get a denial decision at the first step, get a denial decision at the second step, and then file an action with a federal district court. And they're saying that they would have to do this even though that's not Congress's intent. Congress has the intent in creating all of this and creating this structure was to make the process more efficient, was to... That kind of argument about how cumbersome the administrative process could almost be at any time you have this kind of Jarkizi situation, and Jarkizi itself. I think one of the arguments that was presented was, look, why do I have to go through this entire administrative process? I mean, I've got a legal claim that's a perfectly teed up legal claim, why don't you just decide it and relieve me from this miserable experience of going through this administrative process? But the Supreme Court's cases and our cases don't give effect to that kind of argument because where Congress has set up an administrative review scheme supplemented by judicial review at the back end, then it's incumbent upon somebody to explain why it is that that process shouldn't be followed through. The burden doesn't go the other way. It goes in favor of thinking that that's the specialized process that you would normally pursue to its conclusion. Even though it's cumbersome, it can be cumbersome, even though it takes some time, that's just what Congress has laid out. Your Honor, I want to get to that exact question in a moment. Just before I get there, I would say that the clear and convincing evidence and the burden of showing that there's clear and convincing evidence really is on USCIS here because we have a statute that says such denial. And the question is, what does such denial means in the first instance? And that's already been answered by the McNary case that says that's not about policy challenges, that's about the individual application challenges. But to get to your exact question, the Jarcase case and the progeny of Thunder Basin are really about a different scenario. The cases there are about an administrative process that is really a substitute for a district court action. And the question there is, should there be a separate district court action allowed in certain circumstances, an administrative process that you noted is then backstopped by a judicial review at the Court of Appeals? And sometimes the administrative process does not allow for every question to be answered. The administrative process can't answer a constitutional question, but courts have said that's okay because we have the Court of Appeals at the back end. But the key difference here is that this administrative process could never resolve any of these applications in a way that will not make the district court action somewhere necessary. In a district court action, looking at the policy and the lawfulness of the policy itself. And the reason I say that is in the Jarcase case and in all of these other cases, something could have happened at the administrative agency level that would have made those cases basically go away. And the questions that were being brought to or trying to be brought to a district court are unnecessary at that point. There is nothing that can happen or be added at the district court level, I mean, sorry, at the administrative appeals level in this case that will matter. And every administrative appeal action and every administrative agency action about uncharacterized discharges is meaningless and offers nothing and adds nothing to this question. Then you still get to raise the claim in district court. I mean, first of all, I'm not sure that that's entirely the case, but the point is there's still district court review at the back end of that in which you can make the exact same legal argument that you're making now. Well, there isn't district court review for everyone, Your Honor. I mean, one of the things that the USCIS- Who can't get it? If your naturalization has been denied by the agency, who's ineligible to get district court review? Well, and that's the way that the USCIS is very careful about how they describe this in their briefing. And they always say when the application is denied, but not every application gets denied. Some of the applications go directly to a district court after failure of USCIS to act within a certain number of days. Well, that's a good thing from your perspective because then you're going directly to district court. So why is that a problem? Well, the question is, if 1421C is meant to be the only and exclusive avenue for these kinds of reviews, how do they explain this other avenue? And through this other avenue, does that district court have the same ability to look at these grounds and the same relief that could be provided there? Because what was a focus of the government is that 1421C says things about there actually being APA review available and it being- Even on the one where, I think it seems like a little bit of a sidelight to talk about the direct review in the district court where the agency hasn't taken action. But even on that one, I think the district court can remand it, right? It's not that the district court has to, as I understand that statute, I believe, that it's up to the applicants to tell the agency to resolve it, right? And so in the normal course, put that statute aside, if we could just put that statute aside for a second. In the normal course, including, I think, in a couple of the course of a couple of the clients you're representing here, the naturalization is denied by the agency. And then under 1421, it goes to the district court. And then district court takes a de novo look at whether naturalization was correctly denied. And then you, in that situation, you have the exact same legal argument you're presenting now. It just gets resolved in the context of an individual's application. It gets resolved in the context of an individual's application. Just to make one more point on the 1447B, Your Honor, remanding it to the agency isn't really an alternative in those cases because the agency can't do anything with this question. The agency, through the administrative process, cannot decide whether its policy is unlawful or not. The supervisors who are making those decisions can't overturn the USCI's policy. So the only thing that's going to happen if it gets remanded to the agency, so then it can go to a 1421C action, is more delay. But then ultimately, it goes to a district court. And first of all, I'm not going to talk about what happens for the agency because I think we have cases that say that it can still be helpful for it to go before the agency. But just put that to one side. At the end of the day, it still gets to a district court and the district court still resolves the exact same legal question that you're presenting here. Isn't that true? They don't resolve the exact same legal question. The question isn't resolved. And if you're looking at the- Why not? Because why wouldn't you argue in the 1421 action before the district court, the naturalization was wrongfully denied because it was based on this category of uncharacterized as falling outside of honorable. And that's just wrong as a matter of law. It shouldn't be done that way. The agency is wrong to think that it can cordon off these people and prevent them from eligibility for naturalization. They should be eligible. And then the district court has to decide that question de novo. And it decides it for the individual and the individual may get naturalized, but you still have an agency policy, a federal agency policy that equates that individual's discharge with an other than honorable or a misconduct type discharge. That's still out there. So it doesn't solve all the problems for this individual. Even an individual getting naturalized still has this reputational- But even in this case, I mean, if you bring a case, any case that's brought before a district court, when a district court addresses whether it was valid for the agency to deny naturalization on the basis of this uncharacterized category, that opinion just has the persuasive force to that opinion has. It's not binding on another district court. It's not binding on a court of appeals. It's just a legal proposition that results in a conclusion for that case. It's the same, depending on what happens in this case, it's as it would be in a 1421 action. It's just that you get a district court who reaches a resolution based on a principle of law, and then we'll see what the effect of that is. Right. And your honor, let me present a hypothetical because I think the uncharacterized discharge action is a little bit hard to get hands around. But if USCIS put out a policy and said it was going to interpret the term person as being only females, so only females are persons under the INA, and they put that out and there were thousands of male naturalization applicants who were seeking naturalization. And because of that new interpretation or that policy would not be able to naturalize. And they have to each and every one of them, according to USCIS, would have to go through the individual naturalization process, which can take years, go through that administrative appeals, get the denial, get the second denial, and then bring it to a federal district court. And what you just said is that that court could say that policy is unlawful, it's discriminatory on its face. And but according to USCIS, that court could just say that, but it would have no precedential effect for any other applicant. And USCIS, for the next 100 years, could make every male naturalization application go through that same burden and that same process, even though, even if every court across the nation said it was unlawful. And so there is a difference between issues that are individualized and particularized and that an agency, through their administrative process, could address, and it could change the outcome, and issues that are collateral and that won't result in necessarily... Let me ask just one more question and then I'm done. I think I'm done. So I won't belabor the point too much more, but as I read the statute under 1421, the scope of relief that's available to the district court is the same scope of relief that's available in any APA action. Because it says, the review of such and odd before the United States District Court for the district in which such person resides in accordance with Chapter 7 of Title V. And so it seems to me that a district court in a 1421 action, regardless of what USCIS says, we can talk about that with USCIS, but the district court relief is commensurate with what's available to any district court handling an APA action. Then it seems to me that at some point you need an injunction because district court after district court across America is reaching the same resolution, but the agency stubbornly insists that it's going to continue applying what 97 district courts have determined as an invalid policy. Well, then maybe a district court can enter an injunction in the same way that any district court handling a case under the APA could enter an injunction. If that's true, then even your point about relief being differential, I think goes away. Is that right? We agree with you in terms of your reading, Your Honor. And we think that a policy being set aside is available to a district court under 1421C action. Obviously, as you know, the government has taken a different position. I think it still goes back to the question of whether somebody has to bring it through a 1421C action, and we don't think that the language of the statute, which is under McNary, is what controls here and under the general electorate view of McNary, says it can only be brought through a 1421C action. Okay. Thank you. I want to make sure my colleagues don't have questions for you. I monopolized the time. Oh, sorry. Judge Rogers? Here is to bring the general electorate case as the basis for prevailing. And your opponent says, well, that was a different statute. And so general electorate doesn't apply here. And I want to understand your response to that, but I also want to understand whether your basic position is your clients do not deny and never have denied that their applications were denied. So there's no issue for the administrative agency to resolve. And even though you may raise before an administrative agency that the CUSC SIS policy is invalid because it's contrary to the statute as a matter of law, the administrative person has no authority under the administrative scheme to grant you relief. Yes, Your Honor, that's correct. That's the key problem, you know, you mentioned the general electorate case, and we're not there. With our case, what we're pointing to in the general electorate decision is its reading of McNary, and that McNary used the text first. And when it found that the language such a denial meant only an individual application and not practice and pattern challenges, that's the exact same kind of language that is at issue in our case. So that's how the general electorate case comes into play here by its reading of McNary and then looking at the McNary statute, which is almost exactly like ours. In terms of, you know, what the agency can do here, the cases cited by the government, they are talking about different statutory schemes. And they're talking about situations where the administrative agency action that is trying to be avoided in those cases, which is not the scenario here. But in those cases, they're trying to avoid an administrative agency action, but that action could itself change the whole posture of the case and make it unnecessary and make the challenge that would then go to a court completely unnecessary. That will never happen here. There's nothing that will happen at the administrative agency level that will change this USCIS policy and change the outcome of these individual applications. And we know that because now two of the plaintiffs have been through the entire administrative agency policy process, and their denials at that level say and refer to this longstanding USCIS policy. So your options are, in your view, only to go directly to the district court as an initial matter under the APA, or I suppose file a petition. I don't know what you file before the agency and ask them to, not a petition for rulemaking, but how they change their policy. There is nothing provided in the INA or otherwise to ask the agency to change a policy. The only path through the agency is just on the individual denials. And policy changes, even with respect to issues impacting naturalization denials, are brought against USCIS on a regular basis through an APA action. So as I read USCIS's brief, they just don't respond to that. They just treat it as, in a footnote, factually distinguishable. And they don't respond to your legal argument about why General Electric is key in this case. Is that the extent of what you think is your best argument? Well, I think it's the first step, and that if you take that first step and do the statutory analysis and it doesn't show that Congress intended this to strip other courts of jurisdiction, that that's the end of the step. But I don't think it's our only argument, but I definitely think it's the first and the foremost argument, is that the statutory language matches the language in McNary meant to only apply to individual applications. And this is clearly not an individual application situation. But you go on to congressional intent and to the legislative history, and you'll find that the same is true there in terms of what Congress must have intended to be the situation here and how it would not make sense to, and not serve Congress's goals, to make individual applicants for the foreseeable future go through this process and go to courts time after time and potentially have different results and therefore different standards for naturalization applied to applicants in the same position. So one of the points that USCIS makes is that in your complaint, you are not limiting the relief to setting aside this policy. In fact, you're asking for individualized relief for your clients. What response do you have there? I think the simplest response is just to go back to the complaint and look at the complaint in the language of the complaint that, well, that's what counsel was quoting. In other words, I'm trying to understand how, given the Supreme Court and our court for alternative process for handling a matter, that process has to be exhausted. And as this case points out, the male who started out in this case actually got some relief where the agency changed his mind. But certainly Congress could have, in my view, understood that an administrative process hopefully would resolve matters and eliminate this backlog that was in the district court, but maybe not all matters, so that as two of your clients have done, they have filed these individual actions in the district court, presumably raising this legal challenge. And those cases have not yet been dismissed. I'm not suggesting they will be, but they haven't been dismissed as of yet. Correct, Your Honor. The motions to dismiss the government filed claiming perclusion based on the lower court's decision here have not been decided. Right. Okay. Your Honor, to pick up on a point that you made in terms of the individual plaintiff in this action that now the action is really not applicable to, it's a very different situation than some of the cases that the defendants here have cited, and in a very important way. You said that the agency changed its mind. You said that USCIS changed its mind, not on the policy or the application of the policy to that plaintiff. No, I understand, but he got relief, so his application wasn't denied. That's all I'm getting at, that it was not a dead end necessarily for everybody. It is a dead end for everyone who has an uncharacterized discharge. What happened there was that the Army made a mistake in issuing that discharge and then had to revoke that. I understand. That's a relief. Yeah. All right. Anyway. But that's not going to happen with respect to any of the medically discharged veterans because the Army's position is that medically discharged veterans aren't physically capable of continuing to serve and therefore can't be reinstated, and so there is no prospect of the Army changing its mind and retracting the uncharacterized discharge, so the policy itself and the application of the policy by USCIS doesn't change, and there is no hope for any kind of administrative relief for any of those medically discharged madness with uncharacterized discharges, which is different than the supplemental notice that the defendants provided earlier this week of a Second Circuit case called Boyack. I think we have that distinction down, and let me just make sure my colleagues don't have additional questions, and then if not, we'll hear from Ms. Reno, and we'll give you a bit of time for rebuttal. Thank you, Your Honor. Thank you. Ms. Reno? May it please the Court, Katherine Reno for the government. This case presents the very narrow question of whether 1421C precludes the D.C. District Court from hearing plaintiffs' claims. Notably, their claims can and are being heard in the district courts where they reside. The D.C. District Court properly dismissed, based on lack of jurisdiction after conducting the two-step Thunder Basin analysis, and finding that plaintiffs' claims had to be raised in a 1421C action. Given the 1990 Immigration Act's comprehensive review scheme, which provides a rare, if not simply cannot overcome the presumption that Congress intended 1421C to be the exclusive means of judicial review of naturalization applications. So plaintiffs moved the goalposts. They attempt to supplant Thunder Basin and Jarkizi with a standard from cases where judicial review was completely foreclosed, cases like Guerrero-La Sprilla, Make the Road, and McNary. In McNary, the plaintiffs could only get judicial review if they voluntarily surrendered for deportation, and the Supreme Court found that plaintiffs are not required to vet the farm in order to get review of their claims in that manner. Oh, is your position that in General Electric, this Court misread McNary? No, Your Honor. General Electric is distinguishable because the claims there truly were collateral, and the Thunder Basin framework didn't apply. Their GE raised a pattern and practice claim about the way that the EPA was administering the statute, saying that it was administering it in a coercive manner. Therefore, ruling in GE's favor would not have invalidated any particular UAO issue there. Is that the argument that's being made here? I'm sorry, Your Honor, could you repeat your question? Is that the argument that's being made here? Plaintiffs are making that argument, but their claims are absolutely not collateral. It's not collateral to what? To their, basically, they're attacking the legal reasoning for the denial, but that is inextricably intertwined with a challenge to the denial itself. But if the agency has no authority to deal with the legal reasoning? The Supreme Court in Elgin addressed that and found that it wasn't significant that the agency may not be able to find a statute unconstitutional or otherwise maybe dispose of the constitutional claims, as long as the claims eventually made their way to an Article 3 court. And that is exactly what would happen in this case, and in fact, has happened for two of these plaintiffs. The district courts where they reside are hearing these exact claims, and those district courts have a very generous and comprehensive scope of review. They will look at plaintiff's claims de novo, they can, if plaintiffs request, they can hold a hearing de novo, they can make findings of fact and conclusions of law. This is an incredibly comprehensive judicial review scheme that Congress has enacted in the 1990 Immigration Act. And for similar reasons, McNary is distinguishable because that involved a collateral claim. Can you talk about the scope of relief that's available to a district court? Is there a difference between the relief that could be ordered by a district court handling an individual case under 1421 and the relief that could be ordered in an APA action if one were to be permissible, where the plaintiff challenged the validity of the grounds for these denials on the basis that the agency is misconstruing the law and treating the uncharacterized category as falling outside of eligibility for naturalization under 1440? Just to clarify your question, Your Honor, do you mean if, for example, this court were to find that the D.C. district court wrongly dismissed and actually did have jurisdiction in the case? Right. Because as I read the statute, what the district court does in that situation then is to apply the APA. That's correct, Your Honor. And in a 1421C action, that would not allow for national class-wide type relief. Those 1421C claim would be, would offer individual relief. So even, but even in this case, plaintiffs didn't bring a class action complaint. Right. So let's just take the case of an individual. Suppose that instead of having four individuals, there was one individual that brought the claim in D.D.C. And then suppose that we just, let's just assume that D.D.C. can go forward with that action and it's an APA action. Is the scope of relief that the district court can order in that action different from the scope of relief that a district court outside of D.D.C. under 1421 could order, given that under 1421, you just incorporate the APA? Well, 1421 has a more generous standard for plaintiffs. So in fact, it would behoove plaintiffs to bring that in a 1421C action because the court would have de novo review. What about the scope of relief? Relief, right. Yeah. Thanks. So, so there, the, if it was not pled as a class action, again, it would just be individual relief. No, in other words, the plaintiff here argues that in an APA action, the district court could set aside the policy. Period. Well, that's, that's correct. But you're arguing in the 1421C action, the district court could not do that. Is that your position? No, the district, the district court could provide that plaintiff and say, in this case, the court of, excuse me, USCIS acted unlawfully and find it, but it would be limited to, to that plaintiff. So the district court could not order that the policy be set aside. Only that it cannot be applied as to this plaintiff. That's, that's correct because, uh, could the DC district court do that in an APA claim? If well, let me, let me try to be more precise. Could the DC district court in an APA claim, assuming it has jurisdiction, set aside the policy as applied to everyone in the country? No, no, it could not because this case was not pled as a class action. If assuming it were, assuming plaintiff had the scope. Right. So the scope of the scope of the remedy in the, the 1421 case and the scope of the remedy in an APA case brought in DC is exactly the same. Uh, it is the same. Yeah. It would be an individual relief. As long as it's an individual plaintiff in the DDC action and not a class claim, then it seems like we're talking about the same scope of relief, even under you as the government agree with that. Right. Yes. The same scope of relief. Okay. Can I, can I ask, uh, Oh, sorry. Go ahead. No, please. I was going to change topics a little bit. Well, I just want to be clear that in this circuit, the district court in an APA claim would have the authority to do more, at least as to anyone who sues within that district. In other words, by saying that the rule, the policy is invalid. So anybody else coming into the DC district court who is properly before that court and the court has jurisdiction, relief arguably could be broader so that USCIS could not apply the policy as to someone who is a resident of the district of Columbia. That would be the same in say the Eastern district of Kentucky. No question about it. We're just trying, I'm just trying to clarify scope of relief. It's not necessarily just an individual plaintiff relief under the APA as to anyone who comes in the state of Kentucky, uh, under challenging the policy. That's all I'm getting at. But let's go on. Judge Walker has some questions. I was just going to say, Ms. Reno, that as I understand it, in the case of Ms. Mirajeva, I may not be pronouncing that correctly. She signed up to serve this country and then after some service wasn't able to because a lump was found in her breast and the following happened to her between, I've got the timeline here, October, 2018 and February, 2020 and 16 months, the CIS approved her application for citizenship. Then it refused to administer the oath to her. Then it scheduled the oath for her. Then it again refused to administer the oath to her. Then it rejected her application. Then it approved her application for the second time. Then it refused to administer her oath for now the third time. And then it rejected her application for now the second time. I think you're right on all the jurisdiction stuff and on how this particular case should come out. But with regard to your client, USCIS, is that how things are run there? Well, Your Honor, it's also important to consider that this applicant also submitted conflicting forms. So she... Was it her doing or was it the Army gave some conflicting codes, information, details? Well, USCIS was evaluating the paperwork that it received and two of the forms... So you're saying it's her fault that that 16-month roller coaster of yes, no, yes, no, 14 times happened? It's... I don't want to say it's anyone's fault necessarily, but USCIS did certainly receive conflicting information as well. It wasn't as if it was changing its mind based on static information. It was receiving different information and it was responding accordingly. But this case isn't about the merits. It's simply about whether the DC District Court had jurisdiction to review plaintiff's claims and it did not because Congress's framework was meant to be exclusive and plaintiffs cannot overcome that presumption. I agree. Thank you, Ms. Reno. If my colleagues have no further questions, we'll hear from Ms. Wallenberg for rebuttal. We'll give you two minutes back for rebuttal. Ms. Wallenberg? Thank you, Your Honor. Just to follow up on Judge Walker's last point, in terms of the conflicting forms, it was not that she provided any conflicting information and it was what the Army provided to her and she provided to USCIS on a timely basis. One part of your scenario that wasn't quite in the right order is she was actually approved for naturalization and supposed to be scheduled for an oath ceremony before she was discharged and USCIS failed to do that. And then it was only because she was discharged that she then became no longer eligible to be naturalized. In terms of the conflicting information, though, and whether that's how USCIS runs, it is how USCIS runs because during that same period of time, we had two federal court class actions related actions to this matter that were pending where USCIS and DOD were co-defendants and reassured that court on multiple occasions that USCIS had a direct liaison at the Army to clear up and clarify any issues with respect to N-426 forms. And USCIS apparently did not select to use that liaison despite the representations to the lower court. But getting to the question that's really important here, 1421C is not a jurisdiction stripping statute for these purposes. The General Electric case said that McNary said, looked at the language of the statute first. There's nothing in the language of the statute or in the statutory scheme that would say that jurisdiction is taken away, that a court cannot review this under the APA. Even if you wanted to consider it that way and look at the McNary case and some of the other elements that that court mentioned, these individuals are not lawful permanent residents. They face a lot of the same harms and challenges and risks that other individuals face that lawful permanent residents who are in most of these other naturalization cases do not face. And then one thing that's important to question here is when asking the government about the relief that's available, the question seemed to focus around, well, if they had brought a class action claim, that would have been different. But how under this analysis, their analysis, could a class action claim or an organizational plaintiff ever bring a claim because they don't have a denial to bring through a 1421C action? So this analysis would preclude class action claims and would preclude organizational plaintiffs and would allow and insist that thousands of individuals would have to challenge policies over and over and over and over again because it can never be addressed in any other fashion. And that just can't be right for Congress's intent. And I know my time is up. And thank you so much for your consideration. Thank you, counsel. Thank you to both counsel for your arguments this morning. We'll take this case under submission. Thank you.
judges: Srinivasan, Rogers, Walker